People *ex rel.* Macdonnell agt. Fiske.

## SUPREME COURT.

THE PEOPLE *ex rel.* GEORGE MACDONNELL agt. OLIVER FISKE, United States marshal for the southern district of New York.

Where a prisoner is in custody of a United States marshal and the proceedings brought before this court by *certiorari* show that he is in his custody by virtue of process issued upon proceedings which the act of congress authorized to be taken, through federal authority, for the purpose of determining the question whether or not the prisoner should be extradited under the treaty between the United States and Great Britain, to answer for an alleged crime, this court has no jurisdiction nor authority to compel the production of the prisoner before it to enable it to review the proceedings of the federal tribunal.

*New York Special Term, June,* 1873.

ON the 23d of May, 1873, writs of *habeas corpus* and *certiorari* were issued by his honor, judge FANCHER, directed to the United States marshal and to Mr. commissioner Gutman, returnable at oyer and terminer June 4th, 1873. On that day the marshal, through his counsel, made return that he held the petitioner under a warrant issued by commissioner Gutman, pending proceedings for his extradition, on the application of the British government, charged with the crimes of forgery and the utterance of forged paper; that such proceedings had been made the subject of review by the United States circuit court on writs of *habeas corpus* and *certiorari;* and that after such review the prisoner had been remanded by the federal court to the custody of the marshal, to await the issuance of the warrant of the executive for his surrender to the British government.

CHARLES W. BROOKE, *on behalf of the relator.*
JAMES C. CARTER, *on behalf of the marshal.*

DAVIS, *J.*—The application now made is in the nature of
a motion to regard the marshal as in contempt for not
making the proper return to the writ by producing the
prisoner.  Although counsel do not put it in that form, it
amounts substantially to that; and the question is whether,
upon the proceedings and the return now before the court, it
is the duty of the court to issue an attachment, under the
statute, to compel the marshal to produce the body of the
prisoner.

There is no doubt whatever of the power of the state
courts, in all cases where persons are deprived of their
liberty within their territorial jurisdiction, to issue the writ
of *habeas corpus* for the purpose of inquiring into the cause
of the detention; and that power is applicable to all cases
where it does not appear upon the face of the petition for
the writ that the case is one either extra-territorial, or exclu-
sively within the jurisdiction of some other tribunal.  I
assume that the petition in this case did not show to Mr.
justice FANCHER, who issued this writ, any fact clearly estab-
lishing that this prisoner was held by a jurisdiction which
precluded the state court from investigating the cause of
detention.  It therefore became the duty of the judge to
issue the writ, and it became the duty of the marshal so far
to obey it as to make known to the court, in proper form,
over his official signature, the cause of the detention of the
prisoner by himself.

The subject of the jurisdiction of the respective state and
federal courts over the detention of prisoners by them,
respectively, has, since the breaking out of the rebellion,
received a very extended and exhaustive examination.  I
have myself had occasion, in another position, in one or two
instances, to give the whole subject a thorough examination,
and to present my conclusions to the federal courts, in argu-

ments upon cases arising upon writs of *habeas corpus* issued for the purpose of compelling the production, by the military officers of the federal government, of persons enlisted in the United States army, and in cases brought before the federal courts to relieve the officers of those courts from obedience to writs issued out of the state courts. The law in such cases is now extremely well settled. It was, of course, brought sharply to the attention of the respective tribunals by the exigencies of the war, inasmuch as it became apparent that if state judges and state courts were clothed with power to discharge, under the writ of *habeas corpus,* persons who were enlisted in the United States military or naval service, it would be very easy, in some parts of the country, not only to impair, but substantially to destroy, the forces which the government were seeking to use in suppressing the rebellion. Therefore the question became one of very great importance, and involved the determination of the respective jurisdictional rights and powers of the federal and state governments.

The same question, although not in a form which presented it with that directness, but still required its examination to some extent, arose in the case in Wisconsin, alluded to by counsel for the respondent. In that case there had been a trial, conviction and judgment by the federal court, which the state court sought to set aside and disregard, for the purpose of discharging a prisoner held under a final judgment of a federal court. That case involved a very important question as to the right of a state court to intervene in any case where the federal tribunals had, in due process of law, determined the rights and obligations of citizens of the United States, and subjected them by judgment to the consequences of a violation of its laws.

But a far more important question arose in the other class of cases to which allusion has been made. I understand the law, as settled in those cases, to be substantially this: That, in respect to each other, and in respect of the enforcement of

People *ex rel.* Macdonnell agt. Fiske.

the laws of the United States government and of the state governments, the jurisdictions of the two governments are independent. The United States government, in the enforcement of the laws which the constitution permits congress to enact, is regarded as an independent, and, for certain purposes, as substantially a foreign power, as respects the states; and the jurisdiction of the courts of the United States, when enforcing laws enacted by congress, in conformity to the constitution, becomes absolutely exclusive. The state courts have no more power to intervene, for the purpose of interfering with the enforcement of those laws through the federal courts, when jurisdiction is legally conferred on those courts, than a state has to interfere with the operation of the laws of a sister state within the territory of the latter. In respect to the enforcement of those laws in the federal tribunals, they stand, in relation to each other, precisely as the state of Pennsylvania stands with respect to the state of New York. The courts of this state certainly have no power to interfere with the action of the courts in the state of Pennsylvania in the enforcement of the laws of that state; and precisely so far as congress, under the constitution, has clothed the federal courts with power, are those courts as independent, while exercising their jurisdiction, as though they were without the territory of the state of New York. This court has therefore no power whatever to interfere with the enforcement of the laws of congress through the federal courts.

Those are the settled principles in the cases to which I have alluded.

The only question presented here is, whether or not there is a difference between this case and the cases to which allusion has been made, growing out of the fact that by the enactments of congress the state judges are clothed with concurrent jurisdiction in the proceedings for the investigation of the question whether or not there should be an extradition. As I understand the act of congress, it purports to give to state judges power to issue the original warrant and

to proceed with the investigation called for by the act before
the president is authorized to enforce the treaty. If that be
the law, the state court might have been applied to originally,
or rather a state judge (for the act refers not to courts, but to
judges). A state judge, within the description of the act,
might have been applied to originally to issue the process for
the arrest of Macdonnell, and such state judge might have
proceeded to investigate the question whether or not he had
been guilty of an offence in Great Britain which subjected
him to the operation of the treaty, and of course to the provi-
sions of the federal statute under which the state judges would
in that case be acting. Assuming that the state judges have
full power under that act to originate the proceeding, to con-
tinue it, and to furnish the necessary evidence upon which
the secretary of state at Washington will issue his warrant
for the extradition of the accused party, that does not deter-
mine the question, in my judgment, whether, where the
application is not to a state judge, but to a federal authority,
and the proceedings are pending in the federal jurisdiction,
and have ripened into that condition of things in which the
secretary of state, or, more strictly speaking, the president of
the United States, through the secretary of state, has issued
his warrant for the extradition of the accused—whether, at
that stage, the state court is clothed with authority to inter-
vene and review (for it comes to that) the proceedings that
have been had under and by the federal authorities. Juris-
diction may be concurrent *ab origine,* so that a judge of
either court may proceed. But if either judge has proceeded,
and has in due form gone through the requisite steps, investi-
gated the question, and reached a conclusion which has
resulted in the issuing of a warrant of extradition by the
executive, where is the right of another judge to interfere to
arrest the proceedings, or for the purpose substantially of
reviewing the correctness of the decision of the first judge or
officer? It strikes me that that is a very serious and import-
ant question. I should want something pretty clear to con-

vince me that I have the power to overhaul the proceedings and to review (and, of course, to correct, and, if I saw fit, to set aside by discharging the accused party) the proceedings of a federal court or judge under such circumstances. It would be an assumption of jurisdiction that I am not prepared to make, unless clearly convinced that I have the authority, and that I must exercise the duty. This court is asked substantially to review the action that has been had by authorities clothed, under the same act of congress, with full power to enter upon the investigation, and after those authorities have gone through with the investigation. The act of congress does not clothe either a state judge or court with any such power of review. I know of no authority by which the state courts are clothed with any such power to review. That brings the question, it seems to me, to just this: Does the return of the marshal and the proceedings brought here by *certiorari* show that this prisoner is in his custody by virtue of process issued upon proceedings which the act of congress authorized to be taken, through federal authority, for the purpose of determining the question whether or not the prisoner, the petitioner here, should be extradited under the treaty? It seems to me that the returns to the several writs do show,

1st. That a proper application was made to a commissioner of the United States court, who is clothed by the act of congress with full power in the premises.

2d. That that commissioner issued a warrant to the marshal, upon which he took the prisoner into his custody and held him pending the examination.

3d. That the examination before the commissioner being concluded, its certification and presentation to the secretary of state were made as required by the act; and it appearing to be satisfactory, the warrant of the president or secretary has been issued directing the marshal to deliver the custody of the accused party to persons to be designated for the purpose of his extradition.

People *ex rel.* Macdonnell agt. Fiske.

All that, upon these papers, appears to have been done, and I am now asked substantially, notwithstanding these papers are before me, to hold the marshal in contempt of this court, and to issue an attachment against him to compel the production of the prisoner, to enable me to review the proceedings of the federal tribunal. I am at a loss to see where that power can be found in this court. I do not think it exists. It follows, therefore, that this motion to consider the marshal in contempt must be denied and the writ of *habeas corpus* dismissed.

Ordered accordingly.